SPENCER, ET AL. *v.* VIGO SCHOOL TOWNSHIP,
KNOX COUNTY, ETC., ET AL.

[No. 18,525. Filed June 1, 1954. Rehearing denied June 30, 1954.
Transfer denied September 14, 1954.]

674

*Lewis & Funk,* of Vincennes, and *Gray & Waddle,* of Petersburg, for appellants.

*Shake & Shake, Ramsey & Ramsey,* of Vincennes and *James A. Jones,* of Bicknell, for appellees.

CRUMPACKER, J.—The appellants sued to enjoin the appellees from issuing and selling bonds to provide money for the construction and equipment of a school building in Vigo Township, Knox County, Indiana. There is a judgment that the appellants take nothing by reason of their complaint from which they appeal. The factual background to this litigation may be stated as follows: For many years Vigo School Township owned, maintained and used a fully equipped grade and high school building in the village of Edwardsport in said township. On November 10, 1951, said building and its contents were completely destroyed by fire and on May 24, 1952, 112 qualified owners of taxable real estate in Vigo Township filed a petition with the appellees requesting that they issue the bonds of said school township in the sum of $244,000 to provide funds with which to replace the building so destroyed. On June 5, 1952, the appellees held a special meeting at which they unanimously adopted a resolution declaring that an indispensable necessity exists for the construction and equipment of a new school building at Edwardsport and that an extraordinary emergency exists for the issuance of bonds to defray the cost of such project. On June 26 and July 7, 1952, remonstrances against said proposed bond issue, signed by

178 owners of taxable real estate in Vigo Township, were filed with the appellees and on August 27, 1952, the appellees, assembled in special meeting, unanimously resolved to proceed with said bond issue notwithstanding said remonstrances. At this point in the proceedings the appellants sought and were denied injunctive relief.

The record and briefs of counsel indicate that· this case was tried on the theory that the rights of the respective parties are governed by the provisions of Chapter 119 of the Acts of 1937, as amended, the same being Sections 64-307 to 64-318, Burns' 1951 Replacement. When this act is read as a whole and each section considered in relation to the others and to the purpose of the entire enactment, it is clear that it is concerned primarily with the subject of taxation, methods and personnel for fixing levies and the limitation thereof. Sec. 3 (§64-309, Burns' 1951 Replacement) fixes the maximum tax rate for all purposes on property within and without the corporate limits of incorporated cities and towns in the state. Sec. 6 (§64-312, Burns' 1951 Replacement) provides that in computing such tax rate levies needed to meet the principal and interest on certain obligations specifically described in clauses (a) (b) (c) and (e) shall be excluded. Clause (d) excludes from such computation levies necessary to meet the principal and interest on all other obligations thereafter incurred and not described in clauses (a) (b) (c) and (e). Sec. 7 (§64-313, Burns' 1951 Replacement) provides that before obligations described in clause (d) of §6 can be incurred a petition must be filed with the proper authority, signed by at least 50 owners of taxable real estate in the unit involved, but if a remonstrance is filed, signed by a greater number of such taxpayers than

signed the petition, then the proposed obligations shall not be incurred.

Commenting on this act the Supreme Court in *Murray* v. *State ex rel. King* (1942), 220 Ind. 323, 42 N. E. 2d 1019 has this to say:

"This 1937 act was not intended to and does not prescribe the procedure for all bond issues by municipal corporations. Its fundamental purpose is to limit tax rates. Obligations are incurred pursuant to authority conferred and under procedure prescribed in other statutes. Nor are the limitations of the 1937 act all-inclusive. They do not apply to tax levies for certain kinds of obligations specifically exempted in clauses (a) (b) (c) and (e) of §6. Clause (d) evidently was inserted to give the taxpayers themselves the opportunity of *exempting from the limitations* of the act obligations to be met by tax levies for purposes other than those mentioned in (a) (b) (c) and (e) and the procedure set up in §7 is applicable only to such other obligations." (Emphasis supplied).

Our construction of the act, fortified by the above pronouncement of the Supreme Court, leaves us in some doubt as to its applicability to the case at hand. It seems to us that the business of building school houses and raising money to pay for them is controlled by special statutes on the subject which, under generally accepted legal principles, supersede general ones. However as the parties and the court below treated said act as applicable and tried the case on that theory we will so consider it.

The parties agree that if the destruction of the Edwardsport school by fire created an emergency within the meaning of clause (c) of §6 (§64-312, Burns' 1951 Replacement) the appellees' right to issue bonds to provide funds to replace it cannot be defeated through the remonstrance provisions of §7 (§64-313, Burns' 1951 Replacement). The appellants'

contention is that the undisputed evidence discloses that within approximately eight days after the fire, room was provided for all the pupils of the Edwardsport school in other schools in Vigo Township where their educational needs are being adequately met and therefore there is no immediate demand for a new building and hence no emergency requiring the issuance of bonds. The Edwardsport school was a large brick building containing 20 classrooms, a science laboratory and a gymnasium and accommodating 345 grade and high school pupils. The fact that it was built presumes an adjudication that it was necessary for the convenient, economical and efficient education of the children of Vigo Township. We must assume that it was needed when built and the evidence clearly indicates a need for its reconstruction. The mere fact that it was completely destroyed by fire brought about an unexpected condition demanding immediate action if the appellees are to discharge the duty with which they are charged by law. In our opinion the fact that the pupils of the Edwardsport school are now housed elsewhere under conditions which the evidence, most favorable to the court's decision, characterizes as crowded, inconvenient and in some instances unsanitary and unhealthy, accentuates the emergency rather than relieves it. Nor is it an answer to the problem to say that the appellees are authorized by law to enter into long-term contracts with other school corporations to accommodate displaced Edwardsport pupils. Even if such action would dissipate the emergency there is no evidence in the record that there is any other eligible school corporation willing to make such a contract with the appellees.

The appellants further contend that no emergency exists for the construction of a new school building

at Edwardsport because authorized procedure permits the consolidation of said school with that of another township. Granting that it might be possible to effect such a consolidation, there is no evidence which tends to show that such procedure would obviate a bond issue or lessen the tax load which the reconstruction of the Edwardsport school will place upon the appellants which, after all, is the kernel of their grievance.

During the trial the appellants propounded five questions to the witness Harold Axe in response to which they sought to prove that there were adequate facilities in the Bicknell school to accommodate, without crowding, 75 of the displaced pupils from Edwardsport and that such facilities were offered to the appellees but refused. Objections to these questions were sustained on the theory that the indicated answers thereto would not tend to prove that no emergency existed. The appellants assert error in these rulings to which contention we do not concur. In our view the whole matter of finding scattered school rooms for the Edwardsport pupils was but a temporary and makeshift method designed to meet the consequences of a disastrous fire which, of itself, created an emergency demanding permanent relief which cannot, as far as the evidence discloses, be provided except through a bond issue. The fact that 75 of those pupils, who were placed elsewhere, could have been accommodated at Bicknell is of no consequence.

Judgment affirmed.

NOTE.—Reported in 119 N. E. 2d 723.